**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Magdalene F. Pierce, | ) | No. CV 06-823-PHX-MHM |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| CVS Pharmacy, Inc. et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Currently pending before the Court are Plaintiff Magdalene F. Pierce's Motion for Summary Judgment (Doc. # 56) and Defendants CVS Pharmacy, et al.'s Cross Motion for Summary Judgment (Doc. # 62).  Having reviewed said motions, the responses and replies thereto, the record, and the applicable law, the Court now issues its ruling.

I.      BACKGROUND

The following facts are undisputed.  Plaintiff Magdalene Pierce was hired by CVS's predecessor, Revco, as a manager trainee in 1992.  (PSOF # 26) Within months, Plaintiff became a store manager.  (DSOF # 2)  In 1997, Revco was acquired by CVS and Plaintiff remained in her position as store manager.  (PSOF # 27)

Approximately two years after Plaintiff was hired, she was diagnosed with multiple sclerosis.  (DSOF # 14)  In the years following Plaintiff's diagnosis, CVS granted Plaintiff's multiple leave-of-absence and light-duty requests. (DSOF # 15) In December 2004, Plaintiff

began to experience an exacerbation of symptoms and requested another leave of absence, which CVS granted.  (Doc. # 63, Ex. 1, pp. 132-133)  On February 11, 2005, Plaintiff's physician released Plaintiff to work, but restricted her to part-time duties at a desk job, i.e., thirty hours a week in a sitting position only.  (Doc. # 63, Ex. 3)  Further, Plaintiff could not stand for more than ten minutes or lift more than ten pounds.  (*Id.*)  Two subsequent work releases issued in May and November 2005, imposed essentially the same restrictions. (PSOF # 53, 54)

In February 2005, Plaintiff wrote to CVS's human resources manager, Brad Dudley, asking for assistance in placing her "in a future position."  Plaintiff explained that she would be "an asset in an office setting" in light of her "detailed experience in an office environment."  (Doc. # 63, Ex. 4)  Thereafter, Plaintiff called Mr. Dudley to inquire whether "there was an office position available."  (Doc. # 63, Ex. 1, p. 138)  There were only two jobs available in the region that matched Plaintiff's requests, but neither was - or became - vacant during the relevant time.  (DSOF # 34)

In September 2005, CVS offered Plaintiff a severance package.  As part of the "Agreement and General Release," CVS offered Plaintiff a lump sum payment of $29,252.16 in exchange for her agreement not to sue.  (DSOF # 35)  Plaintiff refused the offer.  (DSOF # 36)  Plaintiff subsequently accepted a position as an administrative assistant with Cardinal Health in March 2006, where she is employed to date.  (PSOF # 18)  Plaintiff's job is primarily an office job, without a lot of physical tasks.  (PSOF # 20)  In December 2006, CVS terminated Plaintiff's employment after she exhausted her approved two-year leave of absence.  (DSOF # 39)

On February 27, 2006, Plaintiff filed a Complaint in Maricopa County Superior Court alleging claims of disability discrimination and retaliation[1] under the Americans with

---

[1]  Plaintiff states that she has decided not to pursue her retaliation claim and consents to dismissal of the claim with prejudice.  (Doc. # 66, p. 10)

1  Disabilities Act ("ADA") and the Arizona Civil Rights Act ("ACRA").  On March 21, 2006,

2  CVS removed the action to the District Court.  (Doc. # 1)

3  II.     STANDARD OF REVIEW

4         On summary judgment, the moving party is entitled to judgment as a matter of law if

5  the court determines that in the record before it there exists "no genuine issue as to any

6  material fact."  Fed R. Civ. P. 56(c).  The mere existence of some alleged factual dispute

7  between the parties will not defeat an otherwise properly supported motion for summary

8  judgment; the requirement is that there be no genuine issue of material fact.  Anderson v.

9  Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A material fact is any factual dispute that

10 might affect the outcome of the case under the governing substantive law.  Id. at 248.  A

11 factual dispute is genuine if the evidence is such that a reasonable jury could resolve the

12 dispute in favor of the nonmoving party.  Id.

13        The court's role on a motion for summary judgment is not to determine the truth of

14 the matter or to weigh the evidence, or determine credibility, but to determine whether there

15 is a genuine issue for trial. Id. at 252.  A genuine issue of material fact exists "if the evidence

16 is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  The

17 inquiry mirrors the standard for a directed verdict: whether the evidence presented reveals

18 a factual disagreement requiring submission to a jury or whether the evidence is so one sided

19 that one party must prevail as a matter of law.  Id.

20 III.    DISCUSSION

21        Under both the ADA and ACRA, it is illegal for an employer to discriminate against

22 a "qualified individual with a disability."  42 U.S.C. § 12112 (2002); Rent A Center v.

23 Indust. Comm'n of Ariz., 191 Ariz. 406, 409, 956 P.2d 533, 536 (Ct. App. 1998).[2]  A

24 "qualified individual with a disability" is someone who has a disability but who is able to

25

26

27        [2]  Because ACRA is modeled after and is virtually identical to the ADA, the Court will combine its
   analysis of these statutes.  See Fallar v. Compuware Corp., 202 F. Supp. 2d 1067, 1081 n. 9 (D. Ariz. 2002).

28                                              - 3 -

1  perform the essential functions of her job either without any accommodation or with a
2  reasonable accommodation.  Id.  The ADA and the ACRA do not apply if no reasonable
3  accommodation will enable the employee to perform the essential functions of her job.  Rent
4  A Center, 191 Ariz. at 409, 956 P.2d at 536.  Only a qualified individual with a disability
5  may state a claim for discrimination.  Kennedy v. Applause, Inc., 90 F.3d 1477, 1480 (9th Cir.
6  1996).

7              A.      Plaintiff's Essential Functions as Store Manager

8              Whether a function is essential is determined on a case-by-case basis.  Rent A Center,
9  191 Ariz. at 409, 956 P.2d at 536.  Relevant factors to be considered are the employer's
10  judgment, which may be embodied in its written job description; whether the position exists
11  to provide for the performance of the function; the number of employees available to perform
12  the function; and the experience of past incumbents in the job.  Id.; see also 29 C.F.R. §
13  1630.2(n); Miller v. U.S. Bancorp, 926 F. Supp. 994, 997 (D. Or. 1996).

14             Here, the CVS Store Manager job description includes a list of "Essential Functions."
15  Among these functions are a number of physically demanding tasks, including stocking
16  shelves, maintaining and organizing the stock room, and loading and unloading deliveries,
17  including lifting thirty pound trays/cases to a height of four feet.  (Doc. # 63, Ex. 2)

18             As a past incumbent in the job, Plaintiff's experience is a factor in determining what
19  functions are essential to the store manager position.  Plaintiff testified that she believed that
20  all but one of the "Essential Functions" listed in the Store Manager job description were part
21  of her duties and responsibilities as a manager of CVS.  (Doc. # 63, Ex. 1, p. 96-101)  In
22  addition to the essential functions listed in the job description, Plaintiff testified that she had
23  forty daily minimum expectations not specifically enumerated in her job description, which
24  included ensuring that the register was manned at all times; that the grounds were maintained
25  daily; that the doors, windows, showcases and cooler doors were cleaned daily; and that the
26  entire store was faced and kept neat and clean throughout the day, among others.  (Doc. # 63,
27  Ex. 1, pp. 159, 164; Ex. 12)

28                                          - 4 -

1    Although Plaintiff testified that she often delegated many of the essential functions
2    of her manager's job, she admitted that each day was different with respect to the duties she
3    was required to perform.  (Doc. # 63, Ex. 1, p. 83)  Plaintiff testified that on some days, she
4    "walked maybe only 10 or 20 percent," but that during the holiday season, "there were times
5    [she] would be on [her] feet maybe 80 percent of the day."  (*Id.*)  Plaintiff further testified
6    that on some occasions there might be only one other employee in the store, which would
7    necessitate that one person man the register, leaving the other to handle all of the essential
8    functions alone.  (Doc. # 63, Ex. 1, p. 106; Ex. 5, p. 58-61)  According to Plaintiff, she
9    performed physically demanding essential functions even when others were present and
10   would also perform these tasks when training employees.  (Doc. # 63, Ex. 1, pp. 175-176)
11   Accordingly, the undisputed evidence set forth above demonstrates that the essential
12   functions of Plaintiff's job included physically demanding tasks that Plaintiff was not always
13   able to delegate.

14        Plaintiff argues that "the only functions of a store manager that the store manager
15   must personally do are staffing decisions, rates of pay and termination" and that therefore
16   these functions are the only essential functions of her job because all other functions could
17   be delegated to other employees.  (Doc. # 66, p.4; DSOF # 108)  Plaintiff asserts that "it is
18   undisputed that Plaintiff's labor budget was sufficiently large that she was able to retain
19   sufficient employees to perform all of the physical tasks she could not perform to
20   conclusion," and therefore she could be accommodated in this way.

21        The Court disagrees.  First, as discussed above, Plaintiff testified that there were
22   times, for example, when the store was busy or was short-staffed, when she had to undertake
23   physically demanding tasks.  "[F]unctions that might not be considered essential if there were
24   a larger staff may become essential because the staff size is small compared to the volume
25   of work that has to be done."  Hirschhorn v. Sizzler Restaurants Int'l, 913 F. Supp. 1393,
26   1399 (D. Nev. 1995)  Plaintiff contends that "[t]he fact that from time to time Plaintiff
27   performed many of these tasks herself does not transform them into "essential functions.'"

28
                                    - 5 -

1  (Doc. # 66, p.6)  To the contrary, "because an employee may be called upon to do a function

2  only occasionally does not make that job function any less essential."  Id.

3          Next, CVS was not obligated to accommodate Plaintiff by hiring more staff or

4  allocating essential functions of her managerial position to other employees.  "The ADA does

5  not require an employer to exempt an employee from performing essential functions or to

6  reallocate essential functions to other employees."  Dark v. Curry County, 451 F.3d 1078,

7  1089 (9th Cir. 2006); see also Rent A Center, 191 Ariz. at 409, 956 P.2d at 536 (ADA does

8  not require an employer to allocate an essential function of a job to another employee); Matos

9  v. City of Phoenix, 176 Ariz. 125, 130, 859 P.2d 748, 753 ((Ct. App. 1993) (an employer is

10  not required to accommodate an employee by eliminating one or more essential functions of

11  the job).

12          Plaintiff baldly asserts that Plaintiff asked CVS to allow her to return as a store

13  manager.  Plaintiff does not point to any support in the record for this assertion nor can the

14  Court find any.  To the contrary, as noted above, after Plaintiff's physician restricted her to

15  a desk job, she contacted CVS about a possible office position.  Plaintiff wrote to CVS's

16  human resources manager, Brad Dudley, explaining that she would be "an asset in an office

17  setting" in light of her "detailed experience in an office environment."  (Doc. # 63, Ex. 4)

18  Thereafter, Plaintiff called Mr. Dudley to inquire whether "there was an office position

19  available." (Doc. # 63, Ex. 1, p. 138) Mike Huffstuttler, CVS District Manager, testified that

20  Plaintiff did not ask to return to work as a store manager:

21          Q.    Did you talk with [Plaintiff] about how the functions in her store would
                 get done if she came back with those restrictions?
22
23          A.    We never talked about her coming back with those restrictions.

24          Q.    Okay.  Tell me about that.  Why?

25          A.    Well, I mean, I just remember of the times that I spoke with her and she
                 would call me up and say, hey, I just faxed you my doctor's note, that
26               it was never talked about her coming back to work in a store.  Her
                 conversations to me was always, well, I'm talking to Brad [Dudley]
27               about trying to get an admin position here in the office.

28                                              - 6 -

1   (Doc. # 63, Ex. 5, pp. 46-47)

2        In response to Plaintiff's request for an office position, Mr. Dudley testified that he

3   looked for an administrative position for Plaintiff in the regional office, but that none were

4   available.  (Doc. # 63, Ex. 6, p. 132)  Plaintiff testified that Mr. Dudley informed her of this

5   situation.  (Doc. # 63, Ex. 1, pp. 138-139)

6        It is undisputed that all of the medical information provided to CVS by Plaintiff's

7   doctor indicated that Plaintiff could work only in a sedentary "desk job."  The evidence in

8   the record demonstrates that the position of store manager was not a desk job.  The

9   undisputed evidence in the record further demonstrates that Plaintiff did not ask to be

10  accommodated in the position of store manager but instead requested reassignment to a desk

11  job as a reasonable accommodation.  There were none available.  Based on the foregoing, the

12  Court finds that Plaintiff has failed to create a triable issue of fact as to whether she was a

13  qualified individual with a disability.

14       Even assuming that Plaintiff met her burden of establishing a *prima facie* case of

15  disability discrimination, the Court finds that CVS's reason for terminating Plaintiff–that

16  there were no available positions in the district office to accommodate Plaintiff's request for

17  a desk job–was a legitimate and nondiscriminatory one.  See Raytheon v. Hernandez, 540

18  U.S. 44, 55 (2003).  It was incumbent upon Plaintiff to show that CVS's proffered reason

19  was a pretext for disability discrimination.  See Snead v. Metro. Prop. & Cas. Ins. Co., 237

20  F.3d 1080, 1093 (9th Cir. 2001).  Plaintiff has failed to point to any evidence or make any

21  argument in this regard.

22  IV.   CONCLUSION

23       Because Plaintiff failed to create a triable issue of fact as to whether she was a

24  qualified individual with a disability, CVS is entitled to summary judgment on Plaintiff's

25  disability discrimination claim.  Accordingly,

26       **IT IS ORDERED** granting Defendants CVS, et al.'s Motion for Summary Judgment

27  on Plaintiff's disability discrimination claim.  (Doc. # 62)

28                                    - 7 -

1    **IT IS FURTHER ORDERED** denying Plaintiff Magdalene Pierce's Motion for

2 Summary Judgment on her disability discrimination claim.  (Doc. # 56)

3    **IT IS FURTHER ORDERED** dismissing Plaintiff's retaliation claim with prejudice.

4    **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment

5 accordingly.

6    DATED this 28th day of March, 2008.

7

8

9    _____

      Mary H. Murguia
10     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                              - 8 -